OPINION OF THE COURT
Michael D. Stallman, J.
In this CPLR article 78 proceeding, petitioner, a newspaper publishing company, seeks a judgment directing respondent Office of Court Administration (OCA) to produce computer records sought in a Freedom of Information Law (FOIL) request of OCA’s CRIMS (Criminal Records Information Management System) data base, which electronically stores data extracted from criminal court case records.
Facts
On June 5, 2000, petitioner made a FOIL request to obtain the CRIMS electronic data base. It appears that petitioner was operating a commercial venture selling electronic records, and that it planned to resell the CRIMS data base for profit, over the Internet, at per transaction prices substantially below those charged by OCA. By letter dated June 15, 2000, OCA denied petitioner’s request on the ground that the CRIMS data base consisted of court records and that FOIL does not apply to court records. Petitioner administratively appealed the denial; by letter dated June 28, 2000, OCA denied the appeal.
Public access to the subject records is not at issue here. Both parties apparently sell or intend to sell such data. At issue is whether those records are obtainable via FOIL and whether respondent improperly denied petitioner’s FOIL request.
*426 I
New York’s Freedom of Information Law was adopted in 1977. (Public Officers Law § 84 et seq., added by L 1977, ch 933, § 1.) Public Officers Law § 86 (3) excludes “the judiciary” from its definition of an “agency” subject to FOIL. Section 86 (1) defines the “judiciary” as “the courts of the state, including any municipal or district court, whether or not of record.” This all-embracing definition is synonymous with the constitutional definition of the “unified court system.” (NY Const, art VI, § 1 [a].) OCA is the central administrative office of New York’s courts (the “unified court system”). (Judiciary Law § 212 [1] [b].) It is neither an independent agency nor a separate entity. Established by the Chief Administrative Judge, OCA has no distinct existence apart from the courts.
OCA is not itself a court, but rather the courts’ own support office. While two cases have held that OCA is an “agency” that falls within the coverage of Public Officers Law § 86 (1) (see, Babigian v Evans, 104 Misc 2d 140, affd 97 AD2d 992), even those holdings do not mean that respondent must make all records in its possession available to the public. Matter of Quirk v Evans (116 Misc 2d 554, affd 97 AD2d 992) distinguished between records maintained by OCA as an agency carrying out its administrative functions (such as the employee salary and classifications records at issue in Babigian) which it held were disclosable, and documents or data provided by those performing adjudicatory functions, which are' exempt from disclosure. “[Djocuments provided by those performing adjudicatory functions are exempt, no matter in whose hands they repose.” (Matter of Quirk v Evans, at 560.) Case-related data derived from any court record, however summarized or preserved, wherever located, must be considered adjudicatory and not administrative. The type of data sought here does not pertain to budget, personnel or facilities. Rather, the data at issue here — dispositions in criminal cases — derive from the very substance of the criminal courts’ decisional function.
Merely because the records sought consist of data derived from criminal case records transferred from paper to electronic files do not make this data any less a court record for purposes of FOIL. In Matter of Newsday v Sise (71 NY2d 146, cert denied 486 US 1056), the Court of Appeals expressly rejected the argument that a FOIL exception applies only to the actual paper record of a juror questionnaire, holding that the FOIL exception applies to information extracted from paper records and stored in a different format. The form of compila *427 tion, whether by summary or extrapolation, does not alter the nature of the data or change the character of a court record.
Matter of Williams v Erie County Dist. Attorney (255 AD2d 863 [4th Dept]) and Matter of Thompson v Weinstein (150 AD2d 782 [2d Dept]), relied upon by petitioner, are inapposite. These cases concerned the circumstances under which the prosecution must disclose an expected trial witness’s criminal history to the defense. Contrary to petitioner’s view, a “rap sheet” in the possession of a prosecutor is not subject to FOIL; rather, the prosecutor has a separate statutory duty under CPL 240.45 (1) to disclose the criminal history of a witness who will testify at trial.
The cases cited by petitioner did not address the exclusion from FOIL of court records under Public Officers Law § 86. The courts have consistently held that court records are not subject to disclosure under FOIL, even if those court records are possessed by other agencies. (See, Matter of Mullgrav v Santucci, 195 AD2d 786 [Grand Jury minutes in District Attorney’s possession are not disclosable under FOIL]; Matter of Moore v Santucci, 151 AD2d 677 [FOIL cannot be used to compel District Attorney’s office to disclose trial transcripts; transcripts are court records, not agency records].) Here, the subject court records have not been removed from the court system; they simply have been stored in a different medium.
Unless otherwise statutorily disclosable or available to the public (see, part II, infra), court records are privileged. The judiciary, and only the judiciary, has the power to determine when, and under what conditions, they may be made available.
As a court record, the CRIMS data base is exempt from FOIL pursuant to the exclusion of Public Officers Law § 86 (3).[1]
II
State Finance Law § 94-b (L 1992, ch 55, § 412) establishes a special revenue fund called the Judiciary Data Processing Offset Fund. (State Finance Law § 94-b [1].) The Legislature *428 directed that OCA deposit in this offset fund all fees collected from provision of criminal history searches and other searches for data kept electronically by the unified court system (State Finance Law § 94-b [3]), and that those revenues be used to fund OCA’s data processing and computer operations. (State Finance Law § 94-b [4].) This statute was manifestly intended as a revenue measure. It benefits the taxpayer by providing alternative funding that need not come from tax-generated general funds. It benefits the judiciary by dedicating user-generated fees to court functions instead of the State’s general fund.
Adopted 15 years after FOIL, State Finance Law § 94-b evinces a legislative intent that FOIL not apply to records covered by that section. This statute clearly envisions that OCA would sell criminal histories and other electronically kept court data, because, without such sales, there would be no corpus for such an offset fund. It assumes that the courts, through OCA, have the authority to sell that data and collect the proceeds to defray OCA’s data processing function. (See, State Finance Law § 94-b [4].) Similarly, the Legislature would not have enacted State Finance Law § 94-b if it intended for the data to be subject to FOIL.[2] The Legislature would not have subverted its own revenue measure by allowing access to the same data via FOIL. Petitioner’s attempted use of FOIL is contrary to the clear legislative intent.
Conclusion
Petitioner has not met its burden of demonstrating that respondent acted arbitrarily, capriciously or contrary to law by denying petitioner’s FOIL request for the CRIMS data base.
Accordingly, it is ordered and adjudged that the petition is denied and the proceeding is dismissed.

. On October 17, 2000, after submission of this proceeding, the Executive Director of the New York State Committee on Open Government issued an advisory opinion which concludes that the CRIMS data base constitutes court records not subject to FOIL. On consent, after a conference call, the court afforded both sides the opportunity to submit additional papers relating to the advisory opinion, by November 3, 2000. While not controlling, formal opinions of the Committee on Open Government are viewed as authoritative in interpreting FOIL. (See, Kwasnik v City of New York, 262 AD2d 171.) The Committee reached the same conclusion as this court.

. State Finance Law § 94-b technically does not constitute a repeal by implication (see, McKinney’s Cons Laws of NY, Book 1, Statutes § 397) because the Legislature never intended that FOIL provide access to court records. Rather, it is compelling evidence of continued legislative intent that FOIL is inapplicable to the records sought.