Matter of Bhambhani v Westchester County Dist. Attorney's Off. (2025 NY Slip Op 51900(U))

[*1]

Matter of Bhambhani v Westchester County Dist. Attorney's Off.

2025 NY Slip Op 51900(U)

Decided on December 1, 2025

Supreme Court, Westchester County

Pulver, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 1, 2025
Supreme Court, Westchester County

In the Matter of the Application of Sanjana Bhambhani, Petitioner, For a Judgment Pursuant to Article 78 of the Civil Practice Law and Rules

against
Westchester County District Attorney's Office, Respondent.

Index No. 61653/2025

Sullivan & Cromwell LLP (by Nicholas Bourtin, Phinneas G. Bauer, Anne F. Clark, and Amanda G. Harrison) for Petitioner. 
Susan Cacace, Westchester County District Attorney (by Shea Scanlon Lomma, Steven A. Bender, and William Milaccio) for Respondent.

Sheralyn Pulver, J.

Petitioner, Sanjana Bhambhani ("Petitioner"), moves for relief pursuant to Civil Practice Law and Rules ("CPLR") Article 78 seeking to compel the Westchester County District Attorney's Office ("Respondent") to produce records in response to a Freedom of Information Law ("FOIL") request and to provide particularized and specific reasons for any denials or redactions to same, or, in the alternative, for an order directing an in camera review of the responsive records. Petitioner additionally seeks an award of attorneys' fees pursuant to Public Officers Law ("POL") § 89(4)(c). Respondent has answered, denying Petitioner's entitlement to the relief sought, and Petitioner has filed a reply. For the reasons set forth below, the Court now grants the petition in part and denies it in part. 
The Court read and considered the following papers electronically filed via NYSCEF in making its decision:
• Notice of Petition, Verified Petition, Exhibits 1-4, Memorandum of Law, Request for Judicial Intervention, and Affidavits of Service (NYSCEF Doc. Nos. 1-10).
• Verified Answer, Memorandum of Law, and Exhibits 1-3 (NYSCEF Doc. Nos. 15-19).
• Memorandum of Law in Reply (NYSCEF Doc. No. 25).
Facts
Petitioner is a freelance journalist who reports on law enforcement matters statewide (see NYSCEF Doc. No. 1 ["Petition"], ¶ 5). On October 24, 2024, Petitioner submitted a request for records, pursuant to FOIL, via email to Respondent (NYSCEF Doc. No. 2; hereinafter, "the FOIL request"). Therein, Petitioner requested electronic copies of the following documents:
1. Any and all "Brady lists" and/or "Giglio lists" (per Brady v. Maryland and Giglio v. United States, respectively), created, edited or otherwise maintained by the Westchester County District Attorney's Office as maintained by the Office's Discovery Unit.
2. Any and all internal investigations, counseling memos, disciplinary files, letters of censure, personnel records and/or other records regarding substantiated or founded complaints of wrongdoing, misconduct and/or other policy violations against law enforcement officers, as found in the files of the Discovery Unit of the Westchester County District Attorney's Office. . . . This request seeks all enclosures, exhibits, addendums, memoranda, attachments, letters of censure, settlement agreements and other records contained in any and all responsive records. This request also seeks any and all responsive records reasonably disclosable that pertain to the incident described in any and all initially responsive records.
(id.).

Respondent's Records Access Officer responded to Petitioner by letter dated November 19, 2024, denying the FOIL request in its entirety (NYSCEF Doc. No. 3). As to the request for any "Brady lists" or "Giglio lists," the response states that Respondent does not maintain such records (see id.).[FN1]
As to the remainder of the request, the response states that Respondent compiles certain records regarding law enforcement officers for discovery or other legally required purposes in criminal cases, and such compilations are collectively exempt from disclosure as privileged attorney work-product, information collected purely in anticipation of litigation, and as pre-decisional intra-agency materials regarding potential witnesses.
Further, according to the response, individual records within such compilations are exempt from disclosure inasmuch as they contain details regarding non-testifying witnesses or witnesses who requested that their information not be disclosed; personal or private information concerning witnesses; information regarding pending cases where disclosure would interfere with law enforcement; identities of sexual abuse and child victims; and information that would reveal the identities of confidential sources, compromise law enforcement investigations, and reveal personal information that would endanger law enforcement personnel and the public. Additionally, because the records in Respondent's possession include records created by outside law enforcement agencies, Respondent contended that conferring with the outside agencies to confirm which, if any, exemptions to disclosure apply would necessarily entail the creation of [*2]new records (see id.).
Petitioner appealed the denial to Respondent's FOIL Appeals Officer, contending, essentially, that Respondent's categorical denial of the FOIL request in its entirety, without any sort of records review, was improper (see NYSCEF Doc. No. 4).
By letter dated December 23, 2024, the FOIL Appeals Officer denied Petitioner's appeal, reiterating many of the same grounds as stated in the initial denial (see NYSCEF Doc. No. 5). The appeal denial letter additionally contended that Petitioner's request was insufficiently described as the term "law enforcement officers" is vague and could encompass innumerable officers and employees and because a search would have to be done of every file in the office, and such a search cannot be undertaken by an outside agency (see id.). It further stated that the records were provided by external law enforcement agencies with the express agreement that they be disclosed only as required for discovery purposes in criminal cases (see id.).
Discussion
A. General Requirements under FOIL
Pursuant to FOIL, a government agency must make all its records presumptively available for public inspection and copying, except that the agency may deny access to records, or portions thereof, that fall within one or more specifically enumerated exemptions (see POL § 87[2]). A District Attorney's office is an agency that is subject to the requirements of FOIL (see Matter of Newsday, Inc. v Empire State Dev. Corp., 98 NY2d 359, 360 [2002]).
"To promote open government and public accountability, the FOIL imposes a broad duty on government to make its records available to the public . . . All government records are thus presumptively open for public inspection and copying unless they fall within one of the enumerated exemptions to Public Officers Law § 87(2)" (Matter of Gould v New York City Police Dept., 89 NY2d 267, 274-275 [1996]). "To ensure maximum access to government documents, the exemptions are to be narrowly construed, with the burden resting on the agency to demonstrate that the requested material indeed qualifies for exemption . . . only where the material requested falls squarely within the ambit of one of these statutory exemptions may disclosure be withheld" (id. at 275 [internal citations and quotation marks omitted]. See also Matter of Data Tree, LLC v Romaine, 9 NY3d 454, 462 [2007]).
"[T]he agency does not have carte blanche to withhold any information it pleases. Rather it is required to articulate particularized and specific justification and, if necessary, submit the requested materials to the court for in camera inspection, to exempt its records from disclosure" (Matter of Fink v Lefkowitz, 47 NY2d 567, 571 [1979]). "Conclusory assertions that certain records fall within a statutory exemption are not sufficient; evidentiary support is needed" (Matter of Livson v Town of Greenburgh, 141 AD3d 658, 660 [2d Dept. 2016], quoting Matter of Dilworth v Westchester County Dept. of Correction, 93 AD3d 722, 724 [2d Dept. 2012]).
B. Standard of Judicial Review
Judicial review of an agency's determination denying a FOIL request, presuming all administrative remedies have been exhausted, may be obtained by way of a proceeding under CPLR Article 78 (see POL § 89[4][b]). In such an Article 78 proceeding, the appropriate [*3]standard of review is whether the respondent's determination "was affected by an error of law," and not the more common "arbitrary and capricious" standard (see Matter of Prall v New York City Dept. of Corr., 129 AD3d 734, 735 [2d Dept. 2015]; Matter of Jewish Press, Inc. v New York City Police Dept., 190 AD3d 490, 490 [1st Dept. 2021]; CPLR § 7803[3]).
Further, "[j]udicial review of an administrative determination [of a FOIL request] is limited to the grounds invoked by the agency" (Matter of New York Civ. Liberties Union v New York State Off. of Ct. Admin., — NY3d &mdash, &mdash, 2025 NY Slip Op 05784, *2 [2025], quoting Matter of Madeiros v New York State Educ. Dept., 30 NY3d 67, 74 [2017]). "'If the reasons an agency relies on do not reasonably support its determination, the administrative order must be overturned and it cannot be affirmed on an alternative ground that would have been adequate if cited by the agency' . . . An agency wishing to deny disclosure based on a FOIL exemption must do so expressly during the administrative process, and it cannot change its justification for the denial during the course of litigation" (id. at *5, quoting Matter of National Fuel Gas Distrib. Corp. v Pub. Serv. Commn. of the State of NY, 16 NY3d 360, 368 [2011]).
C. Respondent's Categorical Denials Related to Compilations of Records
The Court first addresses the categorical exemptions from disclosure that Respondent claimed for all "compilations" of records gathered for discovery compliance purposes. Under FOIL, an agency may deny disclosure of records or portions thereof that are, among other things, specifically exempted from disclosure by statute (see POL § 87[2][a]). Respondent invoked three statutory exemptions for categorically denying disclosure: the exemptions for attorney work product (CPLR § 3101[c]); materials prepared solely in anticipation of litigation (CPLR § 3101[d][2]); and pre-decisional intra-agency materials regarding potential witnesses (POL § 87[2][g]). Respondent's reliance on these statutory exemptions is misplaced, as explained below.
i. Attorney Work-Product Exemption
The exemption for attorney work product pursuant to CPLR § 3101(c) is "generally limited to materials prepared by an attorney, while acting as an attorney, which contain his or her legal analysis, conclusions, theory, or strategy . . . The exemption should be limited to those materials which are uniquely the product of a lawyer's learning and professional skills, such as materials which reflect his [or her] legal research, analysis, conclusions, legal theory or strategy" (Coads v Nassau County, 231 AD3d 902, 904 [2d Dept. 2024] [internal citations and quotation marks omitted]). Records that are subject to the attorney work product exemption are those that are "primarily and predominantly legal in nature and, in their full content and context, were made to render legal advice or services" (Teran v Ast, 164 AD3d 1496, 1498 [2d Dept. 2018], quoting All Waste Sys. v Gulf Ins. Co., 295 AD2d 379, 380 [2d Dept. 2002]. See also Geffner v Mercy Med. Ctr., 125 AD3d 802, 802 [2d Dept. 2015]).
It is clear from the above cited authorities that the attorney work product exemption is intended to apply to records or materials that are actually prepared by an attorney, and even then, not all records created by an attorney would be considered work product (see id.).
In its initial denial of the FOIL request, Respondent explained that "[t]he records you request were not created by this agency, but by separate law enforcement agencies . . . " (NYSCEF Doc. No. 3, p. 2). Thus, on its face, it would appear that the records at issue are not [*4]attorney work product. But Respondent would have the Court adopt an expansive definition of the attorney work product exemption by applying it to "compilations" of otherwise disclosable records. However, the exemption is meant to apply to records, and not to compilations of individual records, which, on their own, would be subject to disclosure. Expanding the scope of the attorney work product exemption in such a manner opens the door to unintended and unacceptable results. The perils of applying expansive definitions of attorney work product have been noted by legal scholars. For example:
"Work product" is a broad phrase, and an expansive approach to it can easily lead to absurd results. What could be more the "work product" of an attorney than a deed, mortgage, contract, will, etc.? . . . Can it reasonably be urged that [CPLR § 3101] subdivision (c) seeks to exclude from disclosure a relevant deed or contract because a lawyer prepared it? No case has so held and, if sanity prevails, no case will.
(Patrick M. Connors, Prac Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3101:28).

Here, applying the expansive approach urged by Respondent could lead to equally absurd results. It would allow an agency to insulate disclosable records from disclosure simply by compiling them in a manner that involves some degree of legal judgment. Notably, Respondent acknowledged that the individual records sought by Petitioner were created by outside law enforcement agencies and not by its attorneys (see NYSCEF Doc. No. 3, p. 2). Records do not become attorney work product merely because they were compiled by an attorney (see Matter of New York City Asbestos Litig., 37 Misc 3d 1232[A], 2012 NY Slip Op 52298[U], *10 [Sup Ct, New York County 2012]). Further, and even considering that an attorney may have exercised legal judgment and discretion in determining which records are necessary to compile in the first place, the compilation cannot reasonably be said to "contain [the attorney's] legal analysis, conclusions, theory, or strategy" (see Coads, 231 AD3d at 904).
There is an important distinction to be made between the facts of this proceeding and those of the Stengel cases—Matter of Stengel v Vance, 192 AD3d 571 (1st Dept. 2021), and Matter of Stengel v Vance, 198 AD3d 434 (1st Dept. 2021)—relied upon by Respondent in opposition to the petition. At issue in the Stengel cases was a "police tracking spreadsheet" maintained by the New York County District Attorney's Office ("DANY"), which the First Department held constituted attorney work product (see Stengel, 192 AD3d at 571). While the spreadsheet contained information compiled by attorneys from various sources, as described more fully in Respondent's Memorandum of Law (see NYSCEF Doc. No. 16, p. 17), the record at issue was the spreadsheet itself, i.e., an electronic Excel file (see id.). And, perhaps most notably, the spreadsheet in Stengel was created by DANY for internal use by its attorneys (see Stengel, brief for respondents, available at 2021 WL 5039681, *21-22), putting it in the ambit of attorney work product. Thus, the spreadsheet in Stengel cannot reasonably be compared to the compiled records sought by Petitioner in the instant proceeding, which Respondent acknowledged were created by law enforcement agencies and not by its own attorneys. 
ii. Materials Prepared Solely for Litigation
Respondent contended that the compilations of records are also categorically exempt as [*5]materials prepared solely for litigation, pursuant to CPLR § 3101(d)(2). Records subject to this exemption are those that are "prepared by the government solely with respect to its actual or contemplated status as a litigant" (Matter of Westchester Rockland Newspapers v Mosczydlowski, 58 AD2d 234, 237 [2d Dept. 1977]). The agency opposing disclosure has the burden of "identifying the particular material with respect to which the privilege is asserted and establishing with specificity that the material was prepared exclusively in anticipation of litigation" (Coads, 231 AD3d at 905 [internal citation and quotation marks omitted]). The agency opposing disclosure may not rely entirely on affidavits or other submissions containing generalized assertions that the requested materials are exempt from disclosure as material prepared in anticipation of litigation. Rather, the agency must "identif[y] any particular documents that were privileged or 'the authors, recipients and dates on which they were prepared and the impetus for their preparation'" (Peralta v New York City Hous. Auth., 169 AD3d 1071, 1074 [2d Dept. 2019], quoting Claverack Coop. Ins. Co. v Nielsen, 296 AD2d 789, 790 [3d Dept. 2002]).
Respondent has not met its burden of demonstrating the applicability of the statutory exemption for materials prepared solely for litigation. Respondent has not identified any particular document or record to which it contends the exemption applies. Nor does Respondent cite to any authority for the proposition that the exemption for materials prepared solely for litigation applies to a "compilation" of records, separate and apart from the individual records contained therein.
Moreover, Respondent failed to demonstrate how records compiled in anticipation of discovery in criminal cases are exempt from disclosure through an unrelated FOIL request. The exemption for materials prepared solely for litigation under CPLR § 3101(d)(2) has been found to apply only to materials prepared in anticipation of the specific litigation in which the exemption is invoked. In other words, an agency may not refuse to disclose records in response to a FOIL request on the ground that it was prepared solely for litigation in a different matter or in a prior litigation (see Matter of McCrory v Village of Mamaroneck, 34 Misc 3d 603, 623 [Sup Ct, Westchester County 2011] [records prepared in anticipation of prior litigation were not protected from disclosure in a subsequent Article 78 proceeding stemming from a FOIL request denial]; Marten v Eden Park Health Servs., 250 AD2d 44, 47 [3d Dept. 1998] [materials from prior administrative proceeding cannot be considered materials prepared in anticipation of litigation]; E.B. Metal Indus. v State of New York, 138 Misc 2d 698, 700 [Ct Cl 1988] ["As a general rule, material prepared for litigation in a case other than the one in which disclosure is sought is not immunized [under CPLR § 3101(d)(2)]"]).
iii. Intra-Agency Materials
FOIL exempts from disclosure inter- or intra-agency materials which are not (i) statistical or factual tabulations or data; (ii) instructions to staff that affect the public; (iii) final agency policy or determinations; or (iv) external audits, including but not limited to audits performed by the comptroller and the federal government (POL § 87[2][g]). "The point of the intra-agency exception is to permit people within an agency to exchange opinions, advice and criticism freely and frankly, without the chilling prospect of public disclosure" (Matter of New York Times Co. v City of NY Fire Dept., 4 NY3d 477, 488 [2005]). This exemption applies to "'deliberative material,' i.e., communications exchanged for discussion purposes not constituting final policy [*6]decisions" (Matter of Russo v Nassau County Community Coll., 81 NY2d 690, 699 [1993], quoting Matter of Xerox Corp. v Town of Webster, 65 NY2d 131 [1985]).
"Although '[o]pinions and recommendations prepared by agency personnel . . . to assist an agency decision maker in arriving at his [or her] decision' may be protected from disclosure by the intra-agency exemption, the records in which they are contained nonetheless must be produced in redacted form to the extent they contain information subject to disclosure pursuant to FOIL" (Matter of Roth & Roth, LLP v Queens County Dist. Attorney's Off., 239 AD3d 657, 659 [2d Dept. 2025] [internal citation omitted]). Where "[t]he DA neither asserted any particularized or specific objections based on the intra-agency exemption nor produced relevant records in redacted form," the agency's denial is insufficient (see id. at 659-660).
In its denial of Petitioner's FOIL request, Respondent stated, in a conclusory manner, that its compilation of records "consist[s] of subjective, pre-decisional intra-agency materials regarding potential witnesses" (see NYSCEF Doc. No. 3, p. 2). This was reiterated in the denial of Petitioner's appeal (see NYSCEF Doc. No. 5, p. 2). Respondent provided no further elaboration as to the applicability of this exemption, and neither of the two cases it cited in its denials lends support. Notably, in Matter of Spring v County of Monroe, 141 AD3d 1151 (4th Dept. 2016), the Fourth Department held, in relevant part, that a "draft informal dispute resolution" document was exempt from disclosure as inter-agency material because it consisted solely of "evaluations, recommendations and other subjective material" (id. at 1152 [internal citation and quotation marks omitted]). And in Matter of McAulay v Board of Educ. of City of NY, 61 AD2d 1048 (2d Dept. 1978), the Second Department found that documents "setting forth the panel's evaluations of the facts and issues [related to a teacher's appeal of an unsatisfactory rating], and its recommendations and reasoning" were exempt from disclosure as pre-decisional intra-agency material (see id. at 1048). Importantly, in both cases, the exemption was applied to specific identified documents, and not to a compilation of documents or records. That is the key distinction. While the McAuley decision does use the word "compilation" in referring to the subject documents, it is only to describe the "compilation of nonfinal recommendations" contained within the documents, not to a compilation of documents (see id.).
In sum, Respondent has failed to establish that the entirety of its compilation of records is categorically exempt from disclosure as attorney work product, materials collected solely in anticipation of litigation, or pre-decisional intra-agency materials.
D. Respondent's Contentions Regarding Individual Records
Respondent next referenced a slew of exemptions that would apply to individual records within its compilations. According to Petitioner's denial, individual records are exempt insofar as they contain:
• details concerning witnesses who did not testify at trial or who requested exemption from disclosure;[FN2]
• personal, medical and private information concerning witnesses;
• information about pending cases and investigations where disclosure would interfere with a law enforcement function;
• information regarding sealed cases;
• information concerning grand jury investigations; and
• the identities of sexual abuse and child victims.
(see NYSCEF Doc. No. 5, p. 2). However, Respondent did not identify any individual records to which any of these exemptions apply. Likewise, in answering the instant petition, Respondent expounded on the general law regarding some of the individual exemptions but again failed to identify the records to which the claimed exemptions apply (see generally NYSCEF Doc. No. 16, Point Three).

Respondent's denials are insufficient. It bears repeating that Respondent has the burden of demonstrating that the exemptions, which are narrowly construed, squarely apply to the records at issue (see Gould, 89 NY2d at 275). This requires particularized and specific justifications, as well as evidentiary support as opposed to conclusory assertions (see Fink, 47 NY2d at 571; Livson, 141 AD3d at 660; Roth & Roth, LLP, 239 AD3d at 659). A broad allegation that an agency's files contain exempt materials is insufficient to overcome the presumption of open access (see Matter of Konigsberg v Coughlin, 68 NY2d 245, 251 [1986] [noting that the respondents' claim was essentially that their files "probably contained material that was exempt under FOIL"]).
i. Law Enforcement Exception
Respondent additionally invoked the law enforcement exception under POL § 87(2)(e)(i), stating that it was informed by the law enforcement agencies that all of the records, if disclosed, "would reveal the identities of confidential law enforcement personnel and non-routine investigation techniques, compromise law enforcement investigations, and/or reveal protected personal information that would endanger law enforcement personnel as well as citizens" (NYSCEF Doc. No. 5, p. 2).
Here, too, Respondent's denial is insufficient. An agency may not withhold records under the law enforcement exception based upon "a wholly speculative claim of potential interference with an unspecified future investigation to which the documents may or may not be relevant" (Matter of Madeiros v New York State Educ. Dept., 30 NY3d 67, 77 [2017]). While the agency need not make a specific evidentiary showing relating to the dangers posed by disclosing certain records, it must articulate a factual basis for applying the exception (see Matter of Abdur-Rashid v New York City Police Dept., 31 NY3d 217, 226-227 [2018]; Matter of Lesher v Hynes, 19 NY3d 57, 67 [2012]). The agency must do this by identifying the generic kinds or categories of documents that it seeks to withhold, and the generic risks posed by disclosure of those [*7]documents (see id.). In Lesher, for example, the Kings County District Attorney's office met its burden by identifying a specific category of records to withhold (i.e., correspondence with the United States Department of State that contained, among other things, crime summaries and witness information) (see Lesher, 19 NY3d at 67).
In this case, Respondent did not identify any particular categories of records that it sought to withhold. Instead, in effect, it claimed a blanket law enforcement exception for virtually every responsive record in its possession. Of course, not every document in a criminal case file is automatically exempt simply because it is kept there (see id.). Respondent's failure to sufficiently establish the factual basis for claiming the exception renders its claim unavailing (see Matter of Loevy & Loevy v New York City Police Dept., 38 Misc 3d 950, 954-955 [Sup Ct, New York County 2013], citing Matter of New York Assn. of Homes & Servs. for Aging, Inc. v Novello, 13 AD3d 958, 960-961 [3d Dept. 2004]). Moreover, Respondent's denials failed to discern between records from pending criminal cases and those from concluded criminal cases, to which, absent unusual circumstances, the law enforcement exception would not apply (see Lesher, 19 NY3d at 68).
As to Respondent's assertion that the records were provided by law enforcement agencies on the agreement that they would not be disclosed except for purposes of complying with Criminal Procedure Law ("CPL") § 245 discovery requirements, that is unavailing (see NYSCEF Doc No. 5, p. 2). The Court is unaware of any authority under which Respondent can make an agreement to receive records from a law enforcement agency that would automatically trump its obligations under FOIL. Such a position runs counter to the purposes of FOIL. This is especially so in light of the "new reality of disclosure obligations for law enforcement agencies prompted by the repeal of Civil Rights Law § 50-a" (Matter of New York Civ. Liberties Union v New York State Police, 228 AD3d 1162, 1169 [3d Dept. 2024]).
Nor is the Court persuaded by Respondent's claim that complying with the FOIL request would require it to create new records of its communications with the various law enforcement agencies (see NYSCEF Doc. No. 3, p. 3; NYSCEF Doc. No. 5, p. 2). Under POL § 89[3][a], with limited exceptions, an agency is not required to prepare any new record that it does not already possess or maintain. The FOIL request seeks only records that are found within the files of the Discovery Bureau [FN3]
 (see NYSCEF Doc. No. 2). Compliance with the FOIL request does not require disclosure of any new records that are not already in said files. To the extent that Respondent believes it necessary to communicate with the various law enforcement agencies to aid in determining which, if any, exemptions apply to the records, such communications are incidental to Respondent's compliance and do not comprise the sort of newly prepared record contemplated in POL § 89(3)(a).
Respondent, like every agency subject to FOIL, can meet its burden of establishing the applicability of the various exemptions by conducting a review of its records, identifying responsive records, and then determining which exemptions, if any, apply to which of the records. If there is a dispute regarding an asserted exemption, and if the Court is unable to determine from the parties' submissions whether the exemption applies, the Court will conduct an in camera review of those records (see Gould, 89 NY2d at 275; Fink, 47 NY2d at 571). However, Respondent's offer to submit the entirety of its digital database to the Court for in [*8]camera review (see NYSCEF Doc. No. 16, p. 12) appears to be little more than Respondent shirking its own responsibility. The burden of conducting a thorough review of its records rests squarely on Respondent, and it is improper to attempt to put it on the Court's shoulders (see Matter of Brownell v Grady, 147 Misc 2d 105, 108 [Sup Ct, Dutchess County 1990] ["This tack would prematurely shift the burden to the court to conduct a comprehensive review to determine which documents are exempt and for what reason"]). The Court's in camera review, if necessary, should be the last step in the process, not the first (see id. at 108-09).
The Court of Appeals' recent opinion in Matter of New York Civ. Liberties Union v New York State Off. of Ct. Admin., — NY3d &mdash, 2025 NY Slip Op 05784 (Oct. 21, 2025), is instructive.[FN4]
There, in denying a FOIL request, the respondent, Office of Court Administration ("OCA"), sought to categorically withhold all potentially responsive documents, without any review of specific documents, by claiming a blanket attorney-client privilege between OCA and all judges of the court system (see id. at *3). The Court found that OCA's claim of privilege to categorically deny disclosure, as opposed to asserting the privilege to individual documents, was problematic, in relevant part, as it did not allow for a meaningful in camera review (see id.). "We have explained that 'whether a particular document is or is not protected is necessarily a fact-specific determination, most often requiring in camera review' . . . Without having identified or produced any documents for in camera review, OCA cannot assert a blanket privilege over the entire universe of potentially responsive documents" (id., quoting Spectrum Sys. Intl. Corp. v Chemical Bank, 78 NY2d 371, 378 [1991]). Here, likewise, this Court cannot conduct any meaningful in camera review as Respondent has not identifies particular records to which its claimed exemptions apply. 
Therefore, Respondent has failed to sufficiently assert any exemptions to disclosure of individual records in response to the FOIL request.
E. Reasonable Description and Burdensomeness of Request
i. Reasonable Description Requirement
Although Respondent's chief argument now is that Petitioner's FOIL request was properly denied because it was not reasonably described, no such claim was made in Respondent's initial denial of the FOIL request (see NYSCEF Doc. No. 3). Respondent raised the issue of the FOIL request being insufficiently described for the first time in its denial of Petitioner's appeal (see NYSCEF Doc. No. 5, p. 3). There, Respondent limited this claim to two asserted grounds: that Petitioner's reference to all "law enforcement officers" might encompass innumerable officers and employees; and that, since the Discovery Unit performs initial discovery in almost every criminal case, the request essentially asks for review of every file in the District Attorney's office (see id.).
The records sought in a FOIL request must be reasonably described (see POL § 89[3][a]). [*9]This requirement means that the description of the records must be sufficient to enable the agency to locate and identify the records (see Konigsberg, 68 NY2d at 249; Matter of M. Farbman & Sons v New York City Health & Hosps. Corp., 62 NY2d 75, 82-83 [1984]). Before denying a FOIL request on the grounds of unreasonable description, the agency must establish that the description provided by the requester was insufficient to allow it to locate and identify the records sought (see Konigsberg, 68 NY2d at 249). Where a FOIL request is sufficiently described to enable the agency to locate and identify the records sought, the agency may not require any greater specificity from the requester (see id. at 250).
The Court disagrees with Respondent's assertion that the FOIL request, as described, would require review of every single file in its office and invokes innumerable individuals. Petitioner requested records that are within the files of the Discovery Bureau of the Westchester County District Attorney's Office, a bureau which was created in 2022 to efficiently collect, organize, and distribute discovery materials for criminal cases (see affirmation of Frank Luis, NYSCEF Doc. No. 17, p. 2). And the categories of requested records were limited to disciplinary materials related to law enforcement officers.
The Court finds that Petitioner's FOIL request is sufficiently described to enable Respondent to locate and identify responsive records. Indeed, in his affirmation, Frank Luis, Chief of the Discovery Bureau, identified the two digital databases (referred to as "WII" and "1KOne") within which responsive records would be located (see NYSCEF Doc. No. 17, p. 3). In other words, Respondent knows where to look.
ii. Conflation of Reasonable Description and Reasonable Effort Requirements
Respondent conflates the requirement that the request be reasonably described with its obligation to retrieve the requested records if able to do so "with reasonable effort" (POL § 89[3][a]). The Court of Appeals recently addressed this issue in its opinion in Matter of Wagner v New York City Dept. of Educ., — NY3d &mdash, 2025 NY Slip Op 05783 (Oct. 21, 2025). In Wagner, the Court made clear that whether the electronic records sought in a FOIL request are reasonably described is an entirely distinct question from whether the agency has the ability to retrieve the records with reasonable effort (see id. at *2). Wagner involved a FOIL request submitted to the New York City Department of Education ("DOE") for all emails between the DOE and a certain domain name during a specified period of time. DOE denied the request on the ground that it was not reasonably described because its electronic searches of its email database "failed to execute" (see id. at *1). The petitioner's Article 78 petition was denied, and in affirming the denial, the First Department had agreed that the records were not reasonably described because "the descriptions provided are insufficient for purposes of extracting or retrieving the requested document[s] from the virtual file through an electronic word search . . . [by] name or other reasonable technological effort" (id. [internal citation and quotation marks omitted]).
The Court of Appeals, however, held in Wagner that the test employed by the First Department was flawed because it conflated the reasonable description and reasonable effort requirements (see id.). The Court also noted that other Appellate Division decisions—including Matter of Goldstein v Incorporated Vil. of Mamaroneck, 221 AD3d 111 (2d Dept. 2023), cited by Respondent in its memorandum of law—had employed the same flawed test (see Wagner, [*10]2025 NY Slip Op 05783, *2).[FN5]
The Court's observation that "the DOE concedes that it understands what documents petitioner seeks and knows they are located in the agency's electronic database" indicated that the request was reasonably described (see id. at *2). The DOE's contentions regarding the burdensomeness of the request went to the separate question of whether the DOE could retrieve the records with reasonable effort, which the Court did not decide (see id.).
Thus, the first question to answer when evaluating a FOIL request is whether the request is reasonably described. If it is reasonably described, and the records sought are stored electronically, the next question will be whether the agency has the ability to retrieve the records with reasonable effort. "When an agency has the ability to retrieve or extract a record or data maintained in a computer storage system with reasonable effort, it shall be required to do so" (POL § 89[3][a]). "What constitutes reasonable effort is necessarily a case-specific determination" (Wagner, 2025 NY Slip Op 05783, *3).
The crux of Respondent's objection, though framed in terms of unreasonable description, is that reviewing its records would be overly burdensome. According to ADA Luis, Discovery Bureau Chief, the total size of the two identified electronic databases is 86.3 GB (see NYSCEF Doc. No. 17, p. 4). The parties dispute what this number means in terms of how long a review of the records would take, with Respondent contending that it would take one person more than 61 years working full-time on the task, and Petitioner contending that it would take one person just over two years working part-time on the task.[FN6]

Regardless of whether Petitioner's or Respondent's estimates are more accurate, Respondent has not established that it is unable to fully respond to the FOIL request. "[A]n agency may not evade the broad disclosure provisions of FOIL by merely asserting that compliance could potentially require the review of a large volume of records" (New York Civ. Liberties Union, 228 AD3d at 1167, quoting Matter of Puig v New York State Police, 212 AD3d 1025, 1027 [3d Dept. 2023]. See also Konigsberg, 68 NY2d at 249).
An agency may not deny a FOIL request on the ground that it requires review of voluminous records or that the request is burdensome because the agency lacks sufficient [*11]staffing if the agency can engage an outside professional service to assist (see POL § 89[3][a]). Respondent asserts that it cannot engage an outside professional service because the records to be searched include sealed records, confidential records, or records that would endanger the safety of persons or threaten ongoing investigations if divulged to anyone outside of law enforcement. Therefore, Respondent argues, it may deny a request as burdensome or voluminous.
The Court disagrees with Respondent's position. First, Respondent's assertion that the records to be searched include such sealed and confidential materials is conclusory. In any event, even if Respondent could not engage an outside professional service, such does not exempt it from disclosure on the ground of burdensomeness. That was never the intent of FOIL (see New York Civ. Liberties Union, 228 AD3d at 1167-1168 [analyzing the legislative history and finding that the 2008 amendment to FOIL was "intended to ensure that FOIL requests for public documents are complied with and that an agency cannot use the excuse that the FOIL request is voluminous, burdensome or it lacks the staff to copy the documents regardless of the availability of a third party to assist in that endeavor"] [emphasis added; internal citation and quotation marks omitted]).
Full compliance with the subject FOIL request and similar future requests may ultimately require Respondent to reconsider its staffing, reallocate resources, or train additional employees. Considering the voluminous nature of its records, as Respondent claims, it seems somewhat unreasonable for Respondent to rely on one employee to review and respond to every FOIL request. Full compliance may also require Respondent to upgrade its computer systems and procedures for filing law enforcement disciplinary materials to allow for more efficient categorizing and searching. Simply put, Respondent must take whatever steps it determines to be necessary to comply. The Court recognizes that this will take time to implement. That said, a proper response and production of non-privileged documents should not be indefinitely delayed during this process, as records can be produced on a rolling basis. The Court agrees with the approach articulated by the Appellate Division, Third Department: 
Although disclosure of the material at issue may indeed be slow at inception and necessitate a rolling production over several years, that compromise sufficiently mitigates the burden facing respondent, adequately contemplates respondent's future changes to its record-keeping processes and resources, conforms with the broader goals of disclosure pursuant to FOIL and, most importantly, reflects the new reality of disclosure obligations for law enforcement agencies prompted by the repeal of Civil Rights Law § 50-a.
(New York Civ. Liberties Union, 228 AD3d at 1169).

Based upon the foregoing, the Court finds that Respondent lacked a reasonable basis for its wholesale denial of the FOIL request. Respondent improperly asserted exemptions without having conducted any review and without identifying any potentially responsive records, and it failed to establish that the requested records were unreasonably described in the FOIL request.
F. Attorneys' Fees and Litigation Costs
In an Article 78 proceeding stemming from denial of a FOIL request, a petitioner may [*12]recover reasonable attorneys' fees and litigation costs from the respondent agency. The petitioner must "substantially prevail" in the proceeding for there to be any assessment of attorneys' fees and costs, and such assessment is then mandatory if the court finds that the agency had no reasonable basis for denial (see POL § 89[4][c][ii]; Matter of Acme Bus Corp. v County of Suffolk, 136 AD3d 896, 898-899 [2d Dept. 2016] ["The award of attorney's fees is intended to create a clear deterrent to unreasonable delays and denials of access . . . "] [internal citation and quotation marks omitted]; Matter of New York Times Co. v City of New York Off. of the Mayor, 194 AD3d 157, 166 [1st Dept. 2021] ["The legislature's amendment to the fees provision, which made a fees award mandatory rather than 'precatory,' was intended to give more teeth to the public's right of access under FOIL"]).
Petitioner asks the Court to award reasonable attorneys' fees and costs on the grounds that Petitioner substantially prevailed in this proceeding and that Respondent had no reasonable basis for denying the FOIL request.
For all the reasons discussed at length above, the Court finds that Respondent did not have a reasonable basis for the denial of the FOIL request or for the denial of Petitioner's appeal (see Matter of Cohen v Alois, 201 AD3d 1104, 1107 [3d Dept. 2022] ["A pertinent consideration in determining whether an agency had a reasonable basis for denying a FOIL request is whether the agency reasonably claimed the records were exempt from disclosure under Public Officers Law § 87(2)"] [internal citation and quotation marks omitted]). Respondent blanketly, and in a conclusory manner, denied the request in its entirety without having performed any review or identifying any potentially responsive records to which it claims a privilege or exemption, which the Court finds unreasonable.
However, whether Petitioner "substantially prevailed" is a more difficult question to answer at this juncture. For purposes of an award of attorneys' fees, a petitioner substantially prevails when commencement of the Article 78 proceeding results in her eventually receiving most of the documents sought, whether by court order or the respondent's voluntary disclosure (see Acme Bus Corp., 136 AD3d at 897; Matter of Edmond v Suffolk County, 197 AD3d 1297, 1299 [2d Dept. 2021]; Matter of LTTR Home Care, LLC v City of Mount Vernon, 179 AD3d 798, 800 [2d Dept. 2020]; Cohen, 201 AD3d at 1107).[FN7]

The determination of whether a petitioner substantially prevails tends to turn on the relative proportion of records ultimately subject to disclosure as compared to those properly withheld by the agency. Thus, even if some records are ordered to be disclosed, a petitioner does not substantially prevail when the respondent's claims of exemptions are largely sustained (see Matter of Cook v Nassau County Police Dept., 140 AD3d 1059, 1060-1061 [2d Dept. 2016]). That said, a respondent's refusal to make any pre-commencement disclosure usually works against the respondent in this analysis (see Madeiros, 30 NY3d at 79). In Madeiros, the respondent denied a FOIL request in its entirety but, later, voluntarily produced partially redacted records after the petitioner commenced an Article 78 proceeding (see id. at 72). The redactions were upheld as appropriately exempted under FOIL (see id. at 72-73). However, the [*13]Court of Appeals found that the respondent "made no disclosure, redacted or otherwise, prior to petitioner's commencement of this CPLR article 78 proceeding. Although the Department's redactions in the eventually-released records have been upheld, petitioner's legal action ultimately succeeded in obtaining substantial unredacted post-commencement disclosure . . . Under these circumstances, petitioner substantially prevailed . . . " (id. at 79 [emphasis in original]).
Without Respondent having identified any potentially responsive records, and without Respondent having made any voluntary disclosures, the Court cannot yet determine what records must ultimately be disclosed. It may be that Petitioner will substantially prevail; however, the Court believes that such determination is premature at this juncture as the petition is not yet fully determined (see Matter of Jewish Press, Inc. v New York City Dept. of Educ., 183 AD3d 731, 733 [2d Dept. 2020]). Therefore, the Court denies Petitioner's motion for attorneys' fees and litigation costs without prejudice, subject to a renewed motion.
The parties' remaining contentions, to the extent not rendered academic or explicitly addressed herein, have been considered and found to be unavailing.
Accordingly, for all the foregoing reasons, it is hereby
ORDERED that the petition (motion sequence #1) is granted to the extent that the subject FOIL request is remitted to the Respondent, Westchester County District Attorney's Office, for a response that complies with FOIL and this Decision and Order; and it is further
ORDERED that Respondent shall disclose to Petitioner all non-privileged records responsive to the FOIL request, subject to any necessary and appropriate redactions, and/or allege with specificity, setting forth particularized and specific justifications, that any withheld records fall squarely within one of the enumerated exemptions set forth in POL § 87(2); and it is further
ORDERED that, without undue delay, the parties shall confer in a good faith effort to work out a mutually agreeable production schedule. The parties shall, within 180 days, provide a written update to the Court as to the status of any negotiations and the status of Respondent's response to the FOIL request and disclosures. Unless otherwise agreed to by the parties, Respondent shall comply with this Decision and Order within 180 days, and may do so on a rolling basis; and it is further
ORDERED that Petitioner's application for attorneys' fees and costs is denied with leave to renew upon completion of the required production pursuant to the FOIL request.
The foregoing constitutes the Decision and Order of the Court.
Dated: December 1, 2025
White Plains, New York
HON. SHERALYN PULVER
Acting Supreme Court Justice

Footnotes

Footnote 1:Since Respondent has answered that it does not maintain any "Brady lists" or "Giglio lists," and Petitioner does not appear to be disputing that response, request #1 is not at issue in this proceeding.

Footnote 2:To the extent Respondent contends that information about and statements from non-testifying witnesses are categorically exempt from disclosure under FOIL, the Court notes that this contention is inaccurate. Information and statements from witnesses who did not testify at trial may be withheld only upon "a specific showing of an express promise of confidentiality to the source, or a finding that, under the circumstances of the particular case, the confidentiality of the source or information can be reasonably inferred" (Matter of Friedman v Rice, 30 NY3d 461, 472-473 [2017] [overruling prior Second Department holdings]). 

Footnote 3:Identified by Petitioner as the "Discovery Unit" in the FOIL request.

Footnote 4:The opinion was decided approximately 20 days after the instant proceeding was fully submitted, and it reversed Matter of New York Civ. Liberties Union v New York State Off. of Ct. Admin., 224 AD3d 458 (1st Dept. 2024), upon which Respondent had relied in response to the petition. 

Footnote 5:The relevant portion of Goldstein relied upon by Respondent has been abrogated by Wagner. 

Footnote 6:ADA Luis calculates that each GB of data equates to approximately 65,000 pages based on the file size of a Microsoft Word document (see id.). However, ADA Luis acknowledges that, because the databases contain different forms of media, a precise page count cannot be determined (see id.). According to Respondent's Records Access Officer, assuming a review rate of 50 pages per hour, cited as the industry average, and assuming this were her sole task, it would take approximately 61.5 years to review all 5.6 million pages of records (see affirmation of Kim Jeffrey, NYSCEF Doc. No. 18, p. 4).
Petitioner disputes those calculations. Petitioner first argues that Respondent misstated the industry-average review rate as 50 pages per hour instead of 50 documents per hour (see NYSCEF Doc. No. 25, p. 12). Estimating that there are 57,500 documents in Respondent's two identified databases, Petitioner contends that it would take just over two years for one person, working two hours each workday on the task, to complete the review (see id., pp. 12-13).
Footnote 7:A petitioner can also substantially prevail even if the proceeding results in the respondent furnishing a certification that the requested records could not be found after a diligent search (see Matter of Legal Aid Socy. v New York State Dept. of Corr. & Community Supervision, 105 AD3d 1120, 1122 [3d Dept. 2013]).